IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-02581-PAB

DAWN G. PURKEY,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter comes before the Court on the Complaint [Docket No. 1] filed by plaintiff Dawn G. Purkey on October 17, 2016. Plaintiff seeks review of the final decision of defendant Nancy A. Berryhill (the "Commissioner") denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act (the "Act") and for supplemental security income under Title XVI of the Act, 42 U.S.C. §§ 401-33 and 1381-83c. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).[1]

**I. BACKGROUND**

On August 26, 2013, plaintiff applied for a period of disability and disability insurance benefits under Title II of the Act and for supplemental security income under Title XVI of the Act. R. at 11. Plaintiff alleged that she had been disabled since December 15, 2012. *Id*. After an initial administrative denial of her claim, plaintiff

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

received a hearing before an Administrative Law Judge ("ALJ") on March 5, 2015. *Id*. On April 17, 2015, the ALJ issued a decision denying plaintiff's claim. R. at 19. The ALJ found that plaintiff had the following severe impairments: degenerative changes of the lumbar spine, bilateral carpal tunnel syndrome, and left de Quervain's syndrome. R. at 13. The ALJ concluded that these impairments, alone or in combination, did not meet one of the regulations' listed impairments, *id*. at 14, and ruled that plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift 10 pounds frequently and 15 pounds occasionally; can stand, sit and walk for 6 out of 8 hours, each; can push and pull with the lower extremities within the exertional range stated for lifting and carrying on an occasional basis; is limited to occasional pushing and pulling of 10 pounds with the upper extremities; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; cannot balance; can occasionally stoop, kneel and crouch; cannot crawl; can frequently handle and finger bilaterally; should avoid concentrated exposure to extreme cold, vibration, humidity and wetness; should avoid all exposure to unprotected heights or unprotected major manufacturing machinery; and the claimant is limited to semi-skilled work.

R. at 14-15. Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is capable of performing jobs that exist in significant numbers in the national economy. R. at 18. Specifically, the VE identified three positions that plaintiff could perform: gate guard, general office clerk, and self service station attendant. *Id*.; *see also* R. at 41-42. Each of these positions is performed at a light exertional level and is classified as semiskilled, with a specific vocational preparation ("SVP") level of three. R. at 18.

On August 17, 2016, the Appeals Council denied plaintiff's request for review of the ALJ's denial of her claim. R. at 1. Given the Appeals Council's denial, the ALJ's

2

decision is the final decision of the Commissioner.

## II. STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable

physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity

4

(RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff claims that the ALJ erred in the following ways: (1) finding that she was capable of semiskilled jobs without finding she had transferable skills; (2) rejecting the opinion of treating physician Stanford M. Varnado, D.O.; (3) finding that she was capable of certain lifting, postural, and manipulative tasks as part of her RFC; (4) improperly assessing plaintiff's credibility; and (5) failing to account for the effects of plaintiff's obesity. Docket No. 14 at 13-14. Because they are dispositive, the Court addresses whether there is substantial evidence supporting the ALJ's RFC finding as to plaintiff's lifting capacity and the ALJ's related discussion of Dr. Varnado's opinion.

The ALJ found that plaintiff could "lift 10 pounds frequently and 15 pounds occasionally." R. at 14. Plaintiff argues that the ALJ's determinations regarding her RFC with respect to lifting capacity lacked record support. Docket No. 14 at 25. Defendant generally argues that plaintiff's RFC is supported by plaintiff's "subjective symptom testimony and statements to her medical providers, as well as objective diagnostic evidence, examination findings, other medical opinion evidence, and evidence that Plaintiff was engaging in some work activity during the relevant period."

5

Docket No. 18 at 5-6. Defendant does not, however, identify any evidence in the record that specifically supports the ALJ's determination regarding plaintiff's lifting capacity. The ALJ's analysis also does not reveal record evidence supporting the ALJ's RFC determination.

In support of the RFC, the ALJ first discussed plaintiff's testimony regarding her limitations, including that she "can lift 5 pounds, but does not lift anything heavier than that[,] . . . cannot use a screwdriver, as the twisting motion causes excessive pain[,] . . . has numbness in her hands at times[, and] cannot keyboard with any efficiency." R. at 15. The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. at 16.

The ALJ then discussed plaintiff's diagnoses and examination findings. The ALJ noted various positive tests and stated that those "findings are indicative of some degree of difficulty lifting and carrying heavy objects or engaging in constant manipulative or postural activities." R. at 16. The ALJ also states that plaintiff's "exams have also revealed normal neurological exams [and] no findings of weakness." *Id*. (citing R. at 334, 607, 618). The three documents cited by the ALJ as support for this statement are "progress notes" written by Dr. Varnado. R. at 333-35, 606-08, 617-19. None of these progress notes states that plaintiff has a certain lifting capacity or is not weak; rather, they are simply silent on such issues. *Id*. Nonetheless, based on "[t]hese findings," the ALJ concluded that plaintiff "has the ability to lift and carry moderately heavy objects, can perform most postural activities occasionally, and is able to use her

hands for handling and fingering at least frequently." R. at 16.

Plaintiff argues that the ALJ's conclusions are unsupported because the "record does not contain any evidence to suggest how the exam findings, in the presence of the diagnostic test results, relate to lifting . . . capacity." Docket No. 14 at 25-26. Plaintiff further argues that the "ALJ did not explain how he was able to gauge plaintiff's restrictions from the exam findings" and that, as such, the "ALJ only guessed as to plaintiff's restrictions" without the "medical expertise necessary to determine [plaintiff's] restrictions from the raw exam data." *Id*. at 26. Defendant responds, citing the same progress reports that the ALJ referred to, and argues that these "examination findings indicated that [plaintiff] had capabilities commensurate with the limitations the ALJ included in his RFC finding." Docket No. 18 at 10.[2] But defendant, like the ALJ, does not explain how these documents support the ALJ's conclusion that plaintiff could lift moderately heavy objects. While in some circumstances it would be noteworthy that medical reports lacked certain findings, there is no apparent reason here to infer meaning from the absence of certain findings in the particular reports cited by the ALJ. Moreover, as the ALJ noted, there is significant support elsewhere in plaintiff's medical records that plaintiff's conditions caused weakness and pain in her hands. R. at 16; *see also, e.g.*, R. at 194 ("besides the [carpal tunnel] that is disabling, grip is so weak, and the trigger thumb so sensitive and painful"), 214 ("bilateral weakness on boths [sic] hands since jan 09"), 215, 223, 231, 233, 463 ("main complaints are weakness and

---

[2] Defendant also cites other documents not referenced in the ALJ's decision, but they also appear to be silent on plaintiff's lifting capacity. R. at 324, 337, 342, 352-54, 357-58, 425.

pain hands"), 513.

In the ALJ's subsequent discussion of plaintiff's treatment history, he found that her "treatment history is not consistent with her allegations." R. at 17. In particular, the ALJ found that, "while the claimant has had extensive treatment in the past, her treatment since her alleged onset date has been fairly conservative" and consisted of an injection and "episodic prescriptions for pain killing drugs such as gabapentin." *Id*. The ALJ also noted his own observations that plaintiff did not "use wrist splints or braces" and concluded that plaintiff's "treatment history is consistent with some degree of pain," but not plaintiff's alleged disabling symptoms. *Id*. Plaintiff simply argues that the ALJ drew the wrong conclusion from her treatment history. Plaintiff suggests, instead, that her current use of pain killers and history of "surgeries, injections, occupational therapy, massage and heat" is consistent with her allegations and that the lack of additional treatments is of no moment. Docket No. 14 at 30. Notably, as in the analysis of plaintiff's examination findings, the ALJ's conclusion in this context is again predicated on a lack of some evidence that the ALJ apparently expects, in this instance, a lack of more aggressive treatment. However, again the ALJ did not explain why, for example, the lack of a wrist splint is probative in relation to plaintiff's particular alleged limitations.

The Court now turns to the ALJ's discussion of Dr. Varnado's medical opinions. Dr. Varnado practices with the Veterans' Administration, where plaintiff has received most of her medical treatment, and the ALJ found Dr. Varnado was a treating physician. R. at 17. After an examination on October 18, 2013, Dr. Varnado filled out a form titled "Colorado Department of Human Services Initial Medical Determination" for plaintiff on

8

October 31, 2013. R. at 271-72. This form has a combination of check boxes and areas where a medical professional can include narrative explanation. R. at 271-73. Dr. Varnado recorded plaintiff's history as "severe chronic back pain with sciatica, bilateral wrist pain, carpal tunnel syndrome, bilateral leg pain. History of numerous surgeries with scar tissue." R. at 271. Plaintiff's medical records indicate that she has had surgeries on her right wrist due to carpal tunnel syndrome, that she received right middle finger trigger release surgery, and that she has received multiple injections in her wrist. R. at 17. Dr. Varnado checked a box indicating that plaintiff's prognosis was poor and checked a box indicating plaintiff's restrictions, which stated, "SEDENTARY - Lift No More Than 10 Pounds. Individual Sitting with Occasional Walking and Standing." R. at 272. In response to a question asking, "What would allow this person to be employable or able to attend training (such as a medical procedure or specialized equipment)?", Dr. Varnado wrote:

> Not lifting or typing ANYTHING[.]
> Needs to change position every 15-30 minutes.
> Needs opportunity to lie down if needed.

R. at 272 (emphasis original).[3]

The Tenth Circuit's "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v.*

---

[3] Dr. Varnado repeated this same answer in response to a similar question on the next page of the form about limitations necessary for plaintiff to attend training. R. at 273.

9

*Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). In the first step, the ALJ must consider whether the treating physician's opinion is entitled to controlling weight. If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188, *1 (July 2, 1996).

If the opinion is not given controlling weight, the ALJ will proceed to the second step of the inquiry. In the second step, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, *4. The factors that must be applied in determining what weight to give an opinion are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)); *see also* 20 C.F.R. § 404.1527(c). "[A]n ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for

that weight." *Langley*, 373 F.3d at 1119 (internal quotation marks and alterations omitted). Failure to apply this analytical framework and to provide sufficiently specific, legitimate reasons tied to the factors for the weight given to a treating physician's opinion warrants reversal. *Watkins*, 350 F.3d at 1300-01.

Regarding Dr. Varnado's opinion, the ALJ stated in full:

> On October 31, 2013, Stanford MiVarnado [sic], D.O. completed a form indicating that the claimant could not lift or type anything, needed to change positions every 30 minutes, and needed to lie down as needed. Exh. B3F. The undersigned gives this opinion little weight. The opinion was rendered by the claimant's treating physician. However, the opinion is not explained in any significant detail, and does not cite any exam findings in coming to this conclusion. Moreover, the opinion does not appear consistent with the claimant's exam findings and treatment history. Therefore, the undersigned gives this opinion little weight.

R. at 17.

Plaintiff argues that the ALJ improperly rejected Dr. Varnado's opinion based on the ALJ's lay assessment of plaintiff's medical record. Docket No. 14 at 22. Plaintiff claims that the "diagnostic tests and exam findings throughout the treating physician's treatment records provide adequate support for his restrictions," but that such evidence was inappropriately reinterpreted by the ALJ. *Id*. at 13. Defendant responds that the "ALJ properly assessed Dr. Varnado's October 2013 opinion using the relevant factors and gave good reasons for giving it little weight." Docket No. 18 at 6. In particular, defendant claims that the lack of explanation for the medical basis of the conclusions in the opinion was a good reason to afford the opinion little weight. *Id*. at 7. Defendant also argues that the opinion was "otherwise inconsistent with the examination findings of record and with Plaintiff's treatment history," but defendant does not point to any specific inconsistencies. *Id*. Instead, defendant argues that the ALJ's discussion of the

11

medical evidence of record elsewhere in the opinion supports his decision to give Dr. Varnado's opinion little weight and that the ALJ is "not required to repetitively restate the other medical opinion evidence he had already considered and discussed in citing that evidence as a basis for his findings about Dr. Varnado's opinion." Docket No. 18 at 7-8 (citing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished)).

Defendant is correct that Dr. Varnado's opinion does not contain clinical and diagnostic support insofar as it is a check-box form that does not refer to or explain the specific tests or treatments that form the basis of the opinion. The record, however, also includes a number of Dr. Varnado's examination and treatment notes, *e.g.*, R. at 289-350, and his opinion cannot be rejected simply because it was provided on a form that does not itself have significant narrative explanation. *See Bonilla v. Colvin*, No. 12-cv-02182-WYD, 2013 WL 5379881, at *4 (D. Colo. Sept. 26, 2013). "[S]uch a form from a treating physician, as compared to a nontreating doctor, cannot be discounted merely because it was a check-box form." *Id*. (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008)); *see also Magner v. Colvin*, 2017 WL 193213, at *2 (D. Kan. Jan. 18, 2017). Thus, the form of Dr. Varnado's opinion does not itself provide a basis to accord his opinion little weight, but it can be a factor to do so if the opinion is inconsistent with the medical evidence.

As the ALJ acknowledged, the record medical evidence includes many positive tests, physical examinations, and diagnostic examinations of plaintiff indicating plaintiff's conditions and symptoms. R. at 16 ("The claimant's exams have revealed spasms in the musculature of the lumbar spine; painful range of motion of the lumbar spine; positive Tinel's, Phalen's and nerve compression testing of the left wrist; and

positive Finkelstein's test, bilaterally."). The ALJ also acknowledged plaintiff's "extensive treatment" history prior to her alleged onset date, including the various surgeries noted above. R. at 17. The ALJ did not explain why such examinations were not medically acceptable evidence supporting Dr. Varnado's opinion and, as discussed above, the ALJ did not explain why the lack of certain examination findings and more aggressive treatment is inconsistent with Dr. Varnado's opinions about plaintiff's functional limitations. *See* R. at 17. Moreover, the examination notes that the ALJ discussed as lacking findings of weakness were authored by Dr. Varnado. *See* R. at 16 (citing R. at 334, 607, 618). The same is true of the treatment record that the ALJ references as showing conservative treatment, R. at 321; it was written by Dr. Varnado approximately one month after Dr. Varnado authored the opinion at issue. *Compare* R. at 322 (Dec. 3, 2013) *with* R. at 272 (Oct. 31, 2013); *see also* R. at 186 (plaintiff's listing of her medications referred to by the ALJ, all prescribed by Dr. Varnado). There is no indication in the treatment notes that plaintiff's condition improved significantly over that short interval. *See* R. at 319-23. Thus, although the ALJ gave Dr. Varnado's opinion little weight because he found it "does not appear consistent with the claimant's exam findings and treatment history," the ALJ did not identify any conflict between Dr. Varnado's opinion and objective medical evidence. R. at 17. Nonetheless, the ALJ reached contrary conclusions regarding plaintiff's capabilities. In particular, the ALJ's conclusion that plaintiff can "lift and carry moderately heavy objects," R. at 16, is directly contrary to Dr. Varnado's opinion that plaintiff should "[n]ot lift[] . . . ANYTHING." R. at 272 (emphasis in original).

Defendant correctly argues that the Court's role is not to reweigh the medical evidence at issue, Docket No. 18 at 9 (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)), and the Court will not do so. The ALJ's lay medical judgment is, however, not evidence and the Court concludes that the ALJ erred by substituting his analysis of the medical evidence for that of Dr. Varnado. "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (internal quotation marks omitted). The ALJ's rejection of Dr. Varnado's opinion as to plaintiff's lifting capacity on the basis of findings that are absent from Dr. Varnado's examination reports and treatments that Dr. Varnado did not provide amounts to the ALJ improperly substituting his lay assessment of the medical evidence for the opinion of the physician who performed the examinations, provided the treatment, and rendered a medical opinion. There is no reason to believe Dr. Varnado's reports and treatment of plaintiff are inconsistent with his opinion as to plaintiff's limitations other than the ALJ's claim that they are not consistent, which is not a valid basis. *See Langley*, 373 F.3d at 1121 (finding that there was "no legal[] or evidentiary basis" to find a doctor's opinion was unsupported based on the ALJ's interpretation of the underlying evidence). Here, "the ALJ overstepped his bounds into the province of medicine," which is reversible error. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996).

The Court further finds that the ALJ's conclusion in plaintiff's RFC on her lifting capacity is not supported by substantial evidence. Dr. Varnado's opinion undermines

14

the conclusions that the ALJ infers from things that do not appear in plaintiff's medical history. The reports that the ALJ cites as supporting his conclusion that plaintiff can carry moderately heavy objects, R. at 334, 607, 618, were authored by Dr. Varnado. The ALJ's claim that plaintiff's recent treatment history is inconsistent with Dr. Varnado's opinion is also problematic because it is based on the ALJ's lay assessment, without proper analysis, of plaintiff's treatment in relation to plaintiff's symptoms. The Tenth Circuit has held that "before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson*, 987 F.2d at 1490 (internal quotation marks omitted). The ALJ's decision does not reflect any such analysis. *See* R. at 17. The issue of whether stronger pain medication would improve plaintiff's ability to work appears particularly relevant because it is not necessarily constant pain that plaintiff claims is disabling, but her inability to perform certain tasks due, in part, to pain. *See* R. at 15 ("She can lift 5 pounds, but does not lift anything heavier than that. The claimant cannot use a screwdriver, as the twisting motion causes excessive pain. . . . She cannot keyboard with any efficiency."). Additionally, plaintiff testified that she does not engage in daily activities that cause significant pain or with which she has difficulty, R. at 15, and the ALJ credited this testimony. R. at 17. But the ALJ did not analyze whether plaintiff had been prescribed and refused any treatments, or otherwise point to evidence that plaintiff's recent treatment supported a conclusion that plaintiff is not disabled, before concluding that

15

the milder treatment showed a lack of disability and that such treatment was inconsistent with Dr. Varnado's opinion. R. at 17.[4] The ALJ's conclusion that the lack of particular findings and treatments show that plaintiff is capable of more must be rejected in light of the lack of affirmative evidence supporting such a proposition and Dr. Varnado's contrary opinion. *See Musgrave*, 966 F.2d at 1374. The Court will reverse the ALJ's decision and remand for further proceedings consistent with this order.

The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand").

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

---

[4] The ALJ noted that a medical report from after plaintiff allegedly stopped working stated that "at work [she] picked up an object and strained [her] back." R. at 319-20. The ALJ rightly finds that this casts doubt on plaintiff's credibility and plaintiff's allegations about when she last worked, but it is unclear why evidence that plaintiff injured herself by picking something up "suggests a greater ability to perform postural and lifting activities" than is alleged by plaintiff. R. at 17.

DATED March 22, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge